UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SOLANNEX, INC.,<br><br>    Plaintiff,<br>v.<br><br>MIASOLÉ, INC.,<br><br>    Defendant. | Case No.: 11-CV-00171-PSG<br><br>**ORDER GRANTING-IN-PART MOTION TO COMPEL SUPPLEMENTAL INFRINGMENT CONTENTIONS**<br><br>**(Re: Docket No. 64)** |

In this patent infringement case, Defendant MiaSolé ("MiaSolé") moves to compel Plaintiff Solannex ("Solannex") to supplement its infringement contentions to comply with the specificity requirements under Patent L.R. 3–1. Solannex responds that its contentions are sufficient to meet its burden. The matter was submitted without oral argument pursuant to Civ. L.R. 7-1(b). Having reviewed the parties' papers and Solannex's infringement contentions and after considering oral arguments, the court GRANTS-IN-PART MiaSolé's motion. The court sets forth its reasoning below.

1

Case No.: 11-00171-PSG
ORDER

## I. BACKGROUND

On January 11, 2011, Plaintiff Solannex ("Solannex") filed its first patent infringement case against Defendant MiaSolé ("MiaSolé") ("*Solannex I*").[1] Solannex alleges that MiaSolé's MR-series photovoltaic modules (MR-100, MR-107, and MR-111) infringe U.S. Patent No. 7,635,810 ("the '810 patent") and U.S. Patent No. 7,868,249 ("the '249 patent").[2] The asserted patents claim an interconnection structure – and method of manufacturing a portion of that structure – for collecting energy from photovoltaic cells used in thin film solar panels.

On February 21, 2012, Solannex filed a second case against MiaSolé ("*Solannex II*"), alleging infringement of U.S. Patent No. 8,076,568 ("the '568 patent") and U.S. Patent No. 8,110,737 ("the '737 patent"), both of which issued after the commencement of *Solannex I*.[3] Both cases involve "the same parties, patents from the same family with many of the same claim terms, the same inventor, the same prosecution counsel, the same litigation counsel, many of the same witnesses, and the same accused products."[4] On February 1, 2013, the court issued an order consolidating the two cases.[5]

To support its infringement contentions, Solannex relied mainly on three sources:[6]

---

[1] *Solannex, Inc. v. MiaSolé, Inc.,* Case No. 11-00171 PSG (N.D. Cal. Jan. 11, 2011).

[2] *See Solannex I,* Docket No. 1.

[3] *Solannex, Inc. v. MiaSolé, Inc.,* Case No. 12-00832 PSG (N.D. Cal. Feb. 21, 2012).

[4] Docket No. 168, at 1; *see also* Docket No. 58, Ex. 1 at ¶ 9 (noting that many the patents are in the same patent family and include many of the same terms, including "pattern," "sheetlike substrate," "holes extending through said substrate from said first side to said second side," "substantially parallel," and "substantially parallel traces of electrically conductive material.").

[5] Docket No. 168. The parties have consented to magistrate judge jurisdiction in each case. *See* Docket Nos. 16, 17.

[6] Docket No. 65-1.

1. "[S]ample of the interconnection component" that MiaSolé presented at the *Markman* hearing in *Solannex I* and "an identical sample [that MiaSolé provided] to Solannex that demonstrated the combination of the interconnection component with a photovoltaic cell[;]" (collectively as "the Sample");

2. Images on a presentation that MiaSolé made at the same *Markman* hearing in *Solannex I* ("MiaSolé CC Presentation"); and

3. Images from a five-page presentation that MiaSolé made to the Institute of Electrical and Electronics Engineers on February 8, 2012 ("MiaSolé IEEE Presentation").

In addition to the above sources, Solannex also referenced a 70-second MiaSolé's video on Youtube entitled "MiaSolé Reshaping Solar" and a "sample MiaSolé panel" procured by Solannex.[7] A few of Solannex's infringement contentions, however, were alleged only on information and belief, and failed to cite any factual basis.[8]

On January 15, 2013, MiaSolé filed this motion to compel Solannex to further specify its infringement contentions, because Solannex "parroted the claim language, and then it cited three items of support with no further specificity."[9] According to MiaSolé, Solannex "cut and pasted the same support for 58 claims."[10] MiaSolé seeks to compel Solannex to supplement its contentions in the following manner:[11]

1. Insert photographs of the "Sample" (as defined in Solannex's claim chart) in the claim chart and specifically identify the sub-components of the "Sample" that meet each claim element;

---

[7] *Id.* at 24, 30

[8] *Id.* at 1-31.

[9] Docket No. 64 at 2.

[10] *Id.*

[11] *Id.* at 1.

3

Case No.: 11-00171-PSG
ORDER

2. Specifically identify where in each of the two images in the "MiaSolé CC Presentation" (as defined in Solannex's claim chart) each of the claim elements are located;

3. Specifically identify which image(s), and which element within such image(s), in the "MiaSolé IEEE Presentation" (as defined in Solannex's claim chart) meets each claim limitation; and

4. Provide factual support for all contentions made "on information and belief."

As to what constitutes "identify," MiaSolé defined the term with the examples of "drawing arrows, circling, or otherwise highlighting."[12]

## II. LEGAL STANDARDS

The Patent Local Rules of this District provide for a "streamlined mechanism to replace the series of interrogatories that accused infringers would likely have propounded in its absence."[13] These rules "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed."[14] They "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute."[15]

The requirements for disclosure of a patentee's infringement theories are set forth in Patent Local Rule 3-1. Rule 3-1(c) requires a party claiming infringement to provide, in chart format,

---

[12] Docket No. 64 at 7, n. 1.

[13] *FusionArc, Inc. v. Solidus Networks, Inc.,* Case No. C 06–06770 RMW (RS), 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) (quoting *Network Caching Tech., LLC v. Novell Inc.,* Case No. C–01–2079–VRW, 2002 WL 32126128 at *4 (N.D. Cal. Aug. 13, 2002)).

[14] *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1366 n. 12 (Fed. Cir. 2006); *see also Atmel Corp. v. Info. Storage Devices, Inc.,* Case No. C 95–1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998).

[15] *Am. Video Graphics, L.P. v. Elec. Arts, Inc.,* 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005); *see also Network Caching Tech.,* 2002 WL 32126128, at *5 (noting that Patent Local Rule 3–1 are designed to "facilitate discovery").

"where each limitation of each asserted claim is found within each Accused Instrumentality." Rule 3-1(d) requires a party claiming indirect patent infringement to identify:

> [a]ny direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

Rule 3-1(e) requires the party to state "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality."

These rules do not, however, "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case."[16] But to the extent appropriate information is reasonably available to it, a patentee must nevertheless disclose the elements in each accused instrumentality that it contends practices each and every limitation of each asserted claim.[17]

### III.   DISCUSSION

MiaSolé takes issue with Solannex's infringement contentions for two primary reasons: (1) Solannex's contentions based "on information and belief" are improper, and (2) Solannex fails to identify how any of its purported sources of support for its infringement contentions map onto the claim language.

---

[16] *See DCG Sys. v. Checkpoint Tech., LLC,* Case No. 11–cv–03729–PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (quoting *Whipstock Serv., Inc. v. Schlumberger Oilfied Sers.,* Case No. 6:09–cv–113, 2010 WL 143720, at * 1 (E.D. Tex. Jan. 8, 2010)).

[17] *Cf. FusionArc*, 2007 WL 1052900, at *1 (denying motion to strike infringement contentions where "the record demonstrates that [patentee] Fusion Arc's [infringement contentions] reasonably disclose all of the information it presently possesses"). Where the accused instrumentality includes computer software based upon source code made available to the patentee, the patentee must provide "pinpoint citations" to the code identifying the location of each limitation. *See Big Baboon Corp. v. Dell, Inc.,* 723 F. Supp. 2d 1224, 1228 (C.D. Cal. 2010). In at least one instance, this court has gone further, holding that even when no source code has been made available by the defendant, "reverse engineering or its equivalent" may be required for at least one of the accused products to identify where each limitation of each claim is located. *Network Caching, LLC v. Novell, Inc.,* Case No. C 01–2079 VRW, 2002 WL 32126128, at *5 (N.D. Cal. Aug. 13, 2002).

**A. Contentions Made "On Information and Belief"**

The court first addresses the contentions grounded on "information and belief," which MiaSolé challenges that such contentions are insufficient because they lack evidentiary support.[18] MiaSolé further asserts that regardless of both parties' involvement in *Solannex I,* Solannex is required to provide complete infringement contentions for each case.

Solannex explains that it only cited to publicly available information in its claim charts because the parties at the time had not yet to come to an agreement regarding the use of documents produced in *Solannex I*. In its December 28 letter, Solannex proposed that "following an agreement to extend *Solannex I*'s documents' protected status to the present action, it would provide citations to MiaSolé's documents and testimony for the elements grounded on information and belief."[19]

Patent L.R. 3-1(c) clearly specifies that "where each limitation of each asserted claim is found within each Accused Instrumentality." The plaintiff cannot simply respond with "nothing more than a conclusion based 'on information and belief' that something exists or occurs."[20] As explained in *Theranos v. Fuisz,* the court found that simply alleging "on information and belief" and representing "vague, conclusory, and confusing statements" does not satisfy the requirement that the identifications be "as specific as possible."[21]

Even though the '568 patent and the '737 patents are from the same family as those in *Solannex I*, they are, after all, different patents containing different claim language. Patent L.R. 3-

---

[18] Docket No. 64 at 10.

[19] Docket No. 72 at 11.

[20] *Id.* at *5.

[21] *Theranos, Inc. v. Fuisz Pharma LLC*, 11-CV-05236-YGR, 2012 WL 6000798, at *3 (N.D. Cal. Nov. 30, 2012) (quoting *Shared Memory Graphics LLC v. Apple, Inc.,* 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010)).

1(c) goes so far as to specify the need for infringement contention for "each limitation of each asserted claim," so different patents would certainly require separate infringement contentions. Although Solannex's point that "*Solannex I* discovery is instructive on some common infringement issues because the two litigations concern the same accused products remains valid,"[22] a plain reading of the rule still requires separate infringement contentions given that the claims and, as a result, the theories of infringement, would necessarily differ.  As the parties have agreed that *Solannex I* documents may be used in *Solannex II*,[23] it would be almost effortless for Solannex to supplement its infringement contentions, as it so promised.  Solannex therefore must supplement its infringement contentions grounded "on information and belief" with factual support.

**B. Specific Identification of Where Each Claim Limitation is Located**

MiaSolé argues that Solannex must draw and annotate on the relied-upon sources the components that Solannex believes to meet the limitations of the claims.  To understand its complain, consider one example of Solannex's contentions. Citing the Sample, MiaSolé CC Presentation, and MiaSolé's IEEE Presentation, Solannex alleges that MiaSolé's products infringes claim 7, containing the limitation "interconnection component comprises a sheetlike substrate having a top, upward facing side and a bottom downward facing side."[24]  In the corresponding contention, however, Solannex merely states that "[t]he MiaSolé interconnecting component comprises a sheetlike substrate having a top, upward facing side and a bottom, downward facing side,"[25] without highlighting specifically where each claim limitation is located.

---

[22] Docket No. 72 at 12, ll. 14-15.

[23] Docket No. 62.

[24] Docket No. 64 at 4.

[25] *Id.*

7

Case No.: 11-00171-PSG
ORDER

As mentioned above, Patent Local Rule 3-1 does not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case."[26] As a practical implementation, however, "all courts agree that the degree of specificity under Local Rule 3–1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'"[27]

MiaSolé overstates the requirements of Patent L.R. 3–1. MiaSolé is right that Solannex must identify how MiaSolé's products infringe with as much specificity as possible with the information currently available to it. But Solannex is not obligated at this point to supply concrete evidence to support its infringement theory by pointing to the specific structures within the accused product that embodies the claim limitations.[28] Solannex already provided sufficient factual support, including not only materials publicly available, but also materials supplied by MiaSolé.

In its infringement contentions, Solannex addressed each limitation separately and provided factual bases for each. The court agrees with MiaSolé that, throughout Solannex's contention chart, certain infringement explanations do closely mirror the claim language. However, the factual support cited by Solannex remains specific and sufficient to put MiaSolé on notice. MiaSolé can still look at pictorials of the Sample, MiaSolé CC Presentation and MiaSolé IEEE Presentation to figure out which substructure within the product contains the claim limitations.

Moreover, other contentions contain more elaborate explanations on how the accused product embodies the claimed limitation. For example, claim 1 of the '737 Patent states that "said interconnection components further characterized as having a collection region and an

---

[26] *See DCG Sys.,* 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (quoting *Whipstock Serv., Inc.*, 2010 WL 143720, at *1).

[27] *Theranos,* 2012 WL 6000798, at *3.

[28] *Cf. Creagri, Inc. v. Pinnaclife Inc., LLC*, 11-CV-06635-LHK-PSG, 2012 WL 5389775, at *3 (N.D. Cal. 2012).

8
Case No.: 11-00171-PSG
ORDER

interconnection structure." Solannex provided that "[t]he MiaSolé interconnection component has a collection region having structure designed to collect current from the cell surface, as well as structure to interconnect cells."[29] This explanation sufficiently crystallizes Solannex's theory rather than simply parroting the claim language. Overall, the contentions with factual support meet the L.R. 3–1 standard in putting MiaSolé on notice of Solannex's infringement theory.

## IV. CONCLUSION

Solannex must supplement its contentions for those grounded on "information and belief." The rest of Solannex's contentions suffice to provide MiaSolé with its theories of infringement.

**IT IS SO ORDERED**.

Dated: April 18, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[29] Docket No. 64 at 5.